IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

STARLA RENEE ALLEN,           *
                              *
      Plaintiff,              *
                              *
vs.                           *    CIVIL ACTION NO. 20-00308-B
                              *
KILOLO KIJAKAZI,              *
Acting Commissioner of        *
Social Security,              *
                              *
      Defendant.              *


## ORDER

Plaintiff Starla Renee Allen ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security denying her claim for supplemental security income under Title XVI of the Social Security Act, 42 U.S.C. § 1381, *et seq.* On November 4, 2021, the parties consented to have the undersigned Magistrate Judge conduct any and all proceedings in this case. (Doc. 27). Thus, the action was referred to the undersigned to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. (Doc. 29). Upon careful consideration of the administrative record and the memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner be **AFFIRMED.**

## I.   <u>Procedural History</u>[1]

Plaintiff protectively filed an application for supplemental security income alleging disability beginning January 5, 2012,[2] based on attention deficit hyperactivity disorder ("ADHD"), "reading problem," "paranoia," "anger management issues," and "memory gap issues." (Doc. 13 at 549, 578, 582). Plaintiff's application was denied at the initial stage. (<u>Id.</u> at 147). Plaintiff requested a hearing, and an Administrative Law Judge held hearings on June 10, 2013 and April 10, 2014.[3] (<u>Id.</u> at 129-46, 245). On May 29, 2014, the Administrative Law Judge issued an unfavorable decision finding that Plaintiff was not disabled. (<u>Id.</u> at 161-78). On January 12, 2016, the Appeals Council vacated its prior denial of Plaintiff's request for review and remanded the case to the Administrative Law Judge for further evaluation of the

---

[1] The Court's citations to the transcript in this order refer to the pagination assigned in CM/ECF.

[2] The relevant period for deciding Plaintiff's claim for supplemental security income is January 5, 2012 (the date Plaintiff applied for SSI) to May 22, 2019 (the date the ALJ issued his decision). <u>See</u> <u>Moore v. Barnhart</u>, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam).

[3] No testimony was taken at the hearing on June 10, 2013, because the Administrative Law Judge decided at the hearing to order a consultative mental evaluation and schedule another hearing following that evaluation. (<u>See</u> Doc. 13 at 141-46). Plaintiff failed to appear for the supplemental hearing on April 10, 2014, but the Administrative Law Judge elected to proceed *in absentia* and elicited testimony from impartial medical and vocational experts. (<u>See</u> <u>id.</u> at 129-40).

nature and severity of Plaintiff's intellectual impairments.  (Id. at 190-92).

The Administrative Law Judge held another hearing on September 13, 2016[4] and issued an unfavorable decision on December 5, 2016.  (Id. at 82-125, 203-25).  On April 7, 2018, the Appeals Council granted Plaintiff's request for review and remanded the case for assignment to a different Administrative Law Judge to further evaluate Plaintiff's mental impairments in accordance with the revised criteria for evaluating mental impairments effective January 17, 2017, and to further consider Plaintiff's residual functional capacity.  (Id. at 232-35).

On April 24, 2019, Plaintiff, who was represented by counsel, appeared in person and testified at a hearing before a different Administrative Law Judge ("ALJ").  (Id. at 52-78).  A vocational expert ("VE") also testified at the hearing.  (Id. at 78-80).  On May 22, 2019, the ALJ issued an unfavorable decision finding that Plaintiff is not disabled.  (Id. at 26-43).  The Appeals Council denied Plaintiff's request for review on April 9, 2020; therefore, the ALJ's decision dated May 22, 2019 became the final decision of the Commissioner.  (Id. at 8).

Having exhausted her administrative remedies, Plaintiff

---

[4] Plaintiff, who was represented by counsel, appeared in person and testified at the September 2016 administrative hearing.  (Doc. 13 at 82-104, 107-10).  A medical expert and a vocational expert also testified.  (Id. at 105-06, 108-24).

timely filed the present civil action. (Doc. 1). The parties agree that this case is now ripe for judicial review and is properly before this Court pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II.  Issues on Appeal

> **1. Whether the ALJ erred in finding that Plaintiff does not meet Listing 12.05B?**
>
> **2. Whether the ALJ erred by failing to consider and account for Plaintiff's agoraphobia?**
>
> **3. Whether the ALJ erred by failing to adequately account for Plaintiff's severe physical impairments in his RFC assessment?**
>
> **4. Whether the ALJ's step five determination is supported by substantial evidence?**

## III. Factual Background

Plaintiff was twenty-five years of age at the time of her administrative hearing in April 2019. (Doc. 13 at 55). Plaintiff lives in a house with her parents, her sister, and her three children, who were nine, seven, and five years old at the time of her hearing. (Id. at 55-56). Plaintiff's youngest child has autism. (Id. at 56-57). Plaintiff testified that she does not have a driver's license but does have a learner's permit. (Id. at 57). Plaintiff dropped out of school in the ninth grade. (Id. at 58). While in school, Plaintiff had an Individualized Education Program for specific learning disabilities. (Id. at 644-53). Plaintiff has a minimal work history. (See id. at 59, 571-72,

574).

Plaintiff reported that she is unable to work due to severe anxiety, ADHD, learning disability, borderline personality disorder, depression, sleep disorder, extreme anger, and paranoia. (Id. at 739, 767, 820).  Plaintiff has been diagnosed at various times with mood disorder, anxiety disorder, borderline personality disorder, eating disorder, learning disorder, post-traumatic stress disorder, obsessive compulsive disorder, panic disorder, agoraphobia, developmental disorder, depressive disorder, and ADHD.  (Id. at 736, 756, 765, 806, 832, 852, 912, 917, 928, 1079-80).  In addition, Plaintiff's consultative mental examiners variously diagnosed her with paranoid schizophrenia, mild mental retardation, and moderate intellectual disability.  (Id. at 742, 771, 825).  In 2012, Plaintiff briefly received inpatient psychiatric treatment for mood instability, aggressive behavior toward strangers, and suicidal gestures.  (Id. at 756-65). Plaintiff's mental health conditions have been treated with medications and therapy.  (Id. at 748, 753, 758-59, 815, 831, 841, 848, 862, 905, 912, 928, 958-59, 1025, 1070, 1077, 1088).

## IV.  **Standard of Review**

In reviewing claims brought under the Act, this Court's role is a limited one.  The Court's review is limited to determining (1) whether the decision of the Commissioner is supported by substantial evidence and (2) whether the correct legal standards

were applied.[5]  Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir.
1990).   A court may not decide the facts anew, reweigh the
evidence, or substitute its judgment for that of the Commissioner.
Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986).   The
Commissioner's findings of fact must be affirmed if they are based
upon substantial evidence.   Brown v. Sullivan, 921 F.2d 1233, 1235
(11th Cir. 1991).   "Substantial evidence is more than a scintilla,
but less than a preponderance" and consists of "such relevant
evidence as a reasonable person would accept as adequate to support
a conclusion."   Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th
Cir. 1983).   In determining whether substantial evidence exists,
a reviewing court must consider the record as a whole, taking into
account  evidence  both  favorable  and  unfavorable  to  the
Commissioner's decision.   Chester v. Bowen, 792 F.2d 129, 131 (11th
Cir. 1986) (per curiam); Short v. Apfel, 1999 U.S. Dist. LEXIS
10163, at *4 (S.D. Ala. June 14, 1999).

## V.   **Statutory and Regulatory Framework**

An  individual  who  applies  for  Social  Security  disability
benefits must prove her disability.  See 20 C.F.R. § 416.912(a)(1).
Disability  is  defined  as  the  inability  "to  engage  in  any
substantial  gainful  activity  by  reason  of  any  medically

---

[5] This Court's review of the Commissioner's application of legal
principles is plenary.  Walker v. Bowen, 826 F.2d 996, 999 (11th
Cir. 1987) (per curiam).

determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); see also 20 C.F.R. § 416.905(a). The Social Security regulations provide a five-step sequential evaluation process for determining whether a claimant has proven her disability. See 20 C.F.R. § 416.920.

The first two steps of the evaluation require the claimant to prove that she (1) has not engaged in substantial gainful activity and (2) has a severe impairment or combination of impairments. Carpenter v. Comm'r of Soc. Sec., 614 F. App'x 482, 486 (11th Cir. 2015) (per curiam)[6]; 20 C.F.R. § 416.920(a)(4)(i)-(ii). If the claimant does not meet her burden on either inquiry, she will be found not disabled. Carpenter, 614 F. App'x at 486; 20 C.F.R. § 416.920(a)(4)(i)-(ii), (b), (c). If the claimant meets her burden at the first two steps, the evaluation proceeds to step three, where, if the claimant proves that her impairment or combination of impairments meets or equals a listed impairment and satisfies the duration requirement, she will automatically be found disabled. Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir.

---

[6] Federal Appendix cases are unpublished Eleventh Circuit opinions and are not considered binding precedent, but they may be cited as persuasive authority. 11th Cir. R. 36-2; Henry v. Comm'r of Soc. Sec., 802 F.3d 1264, 1267 n.1 (11th Cir. 2015) (per curiam) ("Cases printed in the Federal Appendix are cited as persuasive authority.").

2004); 20 C.F.R. § 416.920(a)(4)(iii), (d).

If the claimant cannot prevail at the third step, the evaluation proceeds to step four, where the claimant must prove an inability to perform her past relevant work. Jones v. Bowen, 810 F.2d 1001, 1005 (11th Cir. 1986); 20 C.F.R. § 416.920(a)(4)(iv), (e), (f). At the fourth step, the ALJ must determine the claimant's residual functional capacity ("RFC"). Phillips, 357 F.3d at 1238. A claimant's RFC is an assessment, based on all relevant medical and other evidence, of a claimant's remaining ability to work despite her impairments. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997); see 20 C.F.R. § 416.945(a). The RFC assessment is used to determine whether a claimant can perform past relevant work at step four and, if necessary, to determine whether a claimant can adjust to other work at step five. Phillips, 357 F.3d at 1238; 20 C.F.R. § 416.920(e).

If a claimant meets her burden at step four, the burden temporarily shifts to the Commissioner to prove at step five that the claimant is capable of performing other work that exists in significant numbers in the national economy, given the claimant's RFC, age, education, and work experience. Goode v. Comm'r of Soc. Sec., 966 F.3d 1277, 1278-79 (11th Cir. 2020); 20 C.F.R. § 416.920(a)(4)(v), (g). If the Commissioner makes this showing, the burden then shifts back to the claimant to prove her inability to perform those jobs in order to be found disabled. Goode, 966

F.3d at 1279.

## VI.  **The ALJ's Findings**

In this case, the ALJ found that Plaintiff has not engaged in substantial gainful activity and has the severe impairments of ADHD, intellectual disorder, mood disorder, learning disorder, depressive disorder, bipolar disorder, anxiety disorder, personality disorder, abdominal disorder, back disorder, migraines, Raynaud's phenomenon, and asthma.  (Doc. 13 at 28-29). The ALJ also found that Plaintiff's impairments, when considered individually and in combination, do not meet or medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, and 416.926).  (Id. at 29-34).

The ALJ next determined that Plaintiff has the RFC to perform light work, with the following additional limitations: she can perform only simple and routine tasks and can read and understand only short and simple information; she can make only simple work-related decisions; she can occasionally interact with supervisors and coworkers; she can work around the public but should avoid direct interaction with the public; and she can deal with only occasional changes in the work setting.  (Id. at 34-42).  The ALJ found that Plaintiff has no past relevant work.  (Id. at 42). Based on the testimony of the VE and the record before him, the ALJ found that Plaintiff can perform other jobs that exist in

significant numbers in the national economy, such as poultry eviscerator, silver wrapper, and maid, any industry. (Id. at 42-43). Thus, the ALJ determined that Plaintiff is not disabled. (Id. at 43).

## VII. **Discussion**

### 1. **Substantial evidence supports the ALJ's finding that Plaintiff does not meet the requirements of Listing 12.05B.**

Plaintiff first argues that the ALJ erred in finding that she does not meet the criteria for intellectual disorders under Listing 12.05B. (Doc. 21 at 18-23). Defendant counters that substantial evidence supports the ALJ's finding that Plaintiff does not have the requisite deficits in adaptive functioning to meet the listing's second prong. (Doc. 24 at 6-9).

At step three of the sequential evaluation process, the Commissioner must determine whether a claimant's impairment meets or equals a disability described in the Listing of Impairments, which describes impairments considered severe enough to prevent a person from performing any substantial gainful activity. Davis v. Shalala, 985 F.2d 528, 532 (11th Cir. 1993). To meet a listing, a claimant "must (1) have a diagnosed condition that is included in the listings and (2) provide objective medical reports documenting that this condition meets the specific criteria of the applicable listing and the duration requirement." Wilkinson on Behalf of Wilkinson v. Bowen, 847 F.2d 660, 662 (11th Cir. 1987)

(per curiam). A diagnosis of a listed impairment alone is insufficient. Id. When a claimant contends that she has an impairment meeting a listed impairment, "the burden is on the claimant to present specific medical findings that meet the various tests listed under the description of the applicable impairment." Id. An impairment that manifests only some of the criteria of a listed impairment, no matter how severely, does not qualify. Sullivan v. Zebley, 493 U.S. 521, 530 (1990).

Listing 12.05 concerns disabilities based on intellectual disorder. See 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00A1. The listing has two paragraphs, designated A and B, each of which requires that a claimant have significantly subaverage general intellectual functioning, significant deficits in current adaptive functioning, and evidence that demonstrates or supports the conclusion that the disorder began prior to age 22. Id. at § 12.00A3.[7] To meet Listing 12.05B, a claimant must establish the following criteria:

1.  Significantly subaverage general intellectual functioning evidenced by a or b:

    a. A full scale (or comparable) IQ score of 70 or below on an individually administered standardized test of general intelligence; or

    b. A full scale (or comparable) IQ score of 71–75 accompanied by a verbal or performance IQ score

---

[7] Plaintiff does not argue that she meets Listing 12.05A or that her impairments equal either paragraph of Listing 12.05. (See Doc. 21).

11

(or comparable part score) of 70 or below on an
individually administered standardized test of
general intelligence; and

2.  Significant deficits in adaptive functioning
    currently manifested by extreme limitation of one,
    or marked limitation of two, of the following areas
    of mental functioning:

    a. Understand, remember, or apply information (see
       12.00E1); or

    b. Interact with others (see 12.00E2); or

    c. Concentrate, persist, or maintain pace (see
       12.00E3); or

    d. Adapt or manage oneself (see 12.00E4); and

3.  The evidence about your current intellectual and
    adaptive functioning and about the history of your
    disorder demonstrates or supports the conclusion
    that the disorder began prior to your attainment of
    age 22.

Id. at § 12.05B.[8]

Here, the ALJ found that Plaintiff does not meet Listing
12.05B because she does not have significant deficits in adaptive
functioning as required to meet the second part of the listing.
(Doc. 13 at 33). Specifically, the ALJ found that Plaintiff does
not satisfy the second prong of Listing 12.05B because she has
only "moderate"[9] limitations in each of its four areas of mental

_____

[8] Defendant assumes, without conceding, that Plaintiff meets the
criteria of the first and third prongs. (Doc. 24 at 6).

[9] The effects of a claimant's mental disorder on each of the four
areas of mental functioning are evaluated based on a five-point
rating scale. The rating points are defined as follows:

functioning. (Id.).

After rating Plaintiff's limitations in the four areas of
mental functioning (see id. at 29-31), the ALJ explained his
finding that Plaintiff does not meet Listing 12.05B, as follows:

> In this case, [Listing 12.05B's] requirements are not
> met because although the claimant has a full scale IQ
> below 70, she does not have significant deficits in
> adaptive functioning as required to meet listing 12.05.
> As discussed above, the undersigned finds that the
> claimant has moderate limitations in the areas of mental
> functioning, i.e., understanding, remembering, or
> applying information, interacting with others,
> concentrating, persisting or maintaining pace, and
> adapting or managing oneself. While the claimant has
> some low IQ scores in the 60s, no examining, nonexaming
> [sic], or treating source has found that the claimant
> has marked or extreme limitations in the applicable
> "paragraph B" criteria to support a finding that the
> requirements of listing 12.05 are met. Moreover, the
> claimant previously obtained a full scale IQ score of 80
> in school. She participated in special education for a

---

a. *No limitation (or none).* You are able to function in
this area independently, appropriately, effectively, and
on a sustained basis.

b. *Mild limitation.* Your functioning in this area
independently, appropriately, effectively, and on a
sustained basis is slightly limited.

c. *Moderate limitation.* Your functioning in this area
independently, appropriately, effectively, and on a
sustained basis is fair.

d. *Marked limitation.* Your functioning in this area
independently, appropriately, effectively, and on a
sustained basis is seriously limited.

e. *Extreme limitation.* You are not able to function in
this area independently, appropriately, effectively, and
on a sustained basis.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00F2.

learning disability.  She did not meet the criteria to be eligible for services for mental retardation.  The claimant had poor attendance in the 9th grade, with 43 absences and 23 tardies and required a behavior management plan for skipping class.  The claimant has reported at times that she dropped out of school because she could not do the work, but her teachers reported that her biggest problem was skipping class.  During the examination with Dr. Zlomke, the claimant obtained a composite score of 47 on the Vineland Adaptive Behavior Scales, which is considered a moderate deficit.  On this same test performed in school, the claimant obtained a composite score of 81.

None of the claimant's treating providers, including her mental health providers, primary care providers, or specialists, have diagnosed her with an intellectual disorder or even borderline intellectual functioning. The claimant's treating mental health providers consistently described the claimant as having normal intelligence and as "intelligent".  She is able to clearly articulate her diagnoses and medications, attend appointments, and request medication refills.  The claimant now has three children, ages 5, 8 and 9.  She has lived with her girlfriend and children during the adjudication period.  The claimant currently lives with multiple family members and cares for her three children, including the youngest who is autistic.  The claimant is able to care for her personal needs without assistance.  She has provided inconsistent reports regarding her ability to perform other activities but she has acknowledged at various times that she is able to prepare meals, and do household chores (wash dishes, sweep, mop, vacuum, make a bed, do the laundry, and clean a bathroom).  The claimant testified that she does not know how to drive; however, there are multiple references throughout the record to the claimant driving.  The claimant also testified that she is only able to read short, simple words but she later testified that she forgets pretty much everything and that she "ha[s] to write it down," indicating that she can both write and read.  She reported helping her daughter with her homework.  During a suicide risk assessment in November 2018, the claimant reported instances of "writing notes".  Although the claimant has not lived alone or independently, the record does not support a finding that she is unable to live independently due to

any cognitive limitations.  There are indications in the record that the claimant has not lived alone in part by choice due to a fear of abandonment related to anxiety as well as financial considerations.  The claimant has lived with family and/or a girlfriend, but there is no objective evidence in the record that the claimant's girlfriend or family have served as the claimant's caretaker.  The claimant does not have a court appointed guardian or conservator.

(Id. at 33-34) (internal record citations omitted).

Plaintiff contends that the ALJ erred in stating that "no examining, nonexaming [sic], or treating source has found that the claimant has marked or extreme limitations in the applicable 'paragraph B' criteria to support a finding that the requirements of listing 12.05 are met."  (Doc. 21 at 20; see Doc. 13 at 33). Plaintiff cites statements in the report from her April 2016 consultative mental examination with Kimberly R. Zlomke, Ph.D.,[10] that she "is *significantly impaired* in her ability to understand, carry out, and remember instructions" and "*severely impaired* in her ability to respond appropriately to supervision, coworkers, and work pressures within a work setting."  (Doc. 21 at 20; see Doc. 13 at 825) (emphasis added).  She also points to the opinion in Dr. Zlomke's accompanying medical source statement that Plaintiff has a *marked limitation* in the ability to make judgments

---

[10] The report from Plaintiff's April 2016 consultative mental examination lists Lacy M. Kantra, M.S. as the graduate examiner, and Dr. Zlomke as the consulting panelist.  (See Doc. 13 at 820, 826).  For the sake of simplicity and consistency with the ALJ's decision, the Court will reference Dr. Zlomke only.

on simple work-related decisions.  (Doc. 21 at 20; see Doc. 13 at 827).

To the extent Plaintiff argues that these statements by Dr. Zlomke equate to a rating of marked or extreme limitations in any of 12.05B2's four broad areas of mental functioning, her assertion is without merit. In her examination report, Dr. Zlomke noted that Plaintiff was alert and oriented, her attention span was fleeting at times, her immediate memory was intact, her recent memory was fair, and her judgment and insight appeared fair.  (Doc. 13 at 822-823).  Plaintiff was cooperative and compliant with the interview process, and she able to discuss her family composition, health concerns, and mood with decent understanding.  (Id. at 823, 825).  Dr. Zlomke diagnosed Plaintiff with schizophrenia and intellectual disability, moderate.[11]  (Id. at 825).  In her evaluation report, Dr. Zlomke opined that Plaintiff is significantly impaired in her ability to understand, carry out, and remember instructions, and that she is severely impaired in her ability to respond appropriately to supervision, coworkers, and work pressures within a work setting.  (Id.).

Dr. Zlomke also completed a medical source statement, in which

---

[11] Dr. Zlomke administered the Wechsler Adult Intelligence Scale - Fourth Edition, on which Plaintiff obtained a Full Scale IQ score of 65, which ranked in the extremely low range.  (Doc. 13 at 823). Dr. Zlomke believed that the Full Scale IQ score might not be a valid estimate of Plaintiff's current level of cognitive ability due to the differences in the composite scores.  (Id. at 824).

she opined that Plaintiff has moderate limitations in her abilities to understand and remember simple instructions and carry out simple instructions; marked limitations in her abilities to make judgments on simple work-related decisions and understand and remember complex instructions; and extreme limitations in her abilities to carry out complex instructions and make judgments on complex work-related decisions. (Id. at 827). Dr. Zlomke also opined that Plaintiff has moderate impairments in her abilities to interact appropriately with the public, supervisors, and co-workers, and in her ability to respond appropriately to usual work situations and to changes in a routine work setting. (Id. at 828).

Although Dr. Zlomke assessed significant, severe, marked, and even extreme impairments in certain mental functioning abilities, she did not assess marked or extreme limitations in any of the four broad areas of mental functioning. (See id. at 825, 827-28). Furthermore, as Plaintiff recognizes, the ALJ acknowledged the marked and extreme limitations assessed by Dr. Zlomke but accorded them little weight and explained his reasons for doing so.[12] For

---

[12] As part of her challenge to the ALJ's step three determination, Plaintiff arguably takes issue with the ALJ's assessment of Dr. Zlomke's medical opinions. However, Plaintiff does not directly allege that the ALJ committed reversible error in his evaluation of the medical opinion evidence, nor does she cite any of the applicable regulations or case law that would apply to such a claim. (See Doc. 21 at 21-23). Thus, to the extent Plaintiff seeks to challenge whether the ALJ applied the correct legal standards in evaluating Dr. Zlomke's medical opinions or whether substantial evidence supports that evaluation, such challenges are

example, the ALJ specifically recognized Dr. Zlomke's opinion that Plaintiff's ability to make judgments on simple work-related decisions is markedly impaired, but he found this opinion to be inconsistent with Dr. Zlomke's clinical findings that Plaintiff's insight and judgment were fair. (Id. at 41; see id. at 823, 827). After stating that he gave little weight to the marked and extreme limitations assessed by Dr. Zlomke because they were "not consistent with or supported by her own examination findings or the objective evidence of record[,]" the ALJ noted that he accorded "partial weight to the remainder of Dr. Zlomke's opinion, as it is somewhat consistent with the other opinions." (Id. at 41).

Plaintiff focuses especially on the statement in Dr. Zlomke's examination report that Plaintiff "is severely impaired in her ability to respond appropriately to supervision, coworkers, and work pressures within a work setting." (Doc. 21 at 22; see Doc. 13 at 825). Plaintiff asserts, without support, that "'severely impaired' . . . can be fairly interpreted as meaning 'marked' in this context," and she contends that Dr. Zlomke's statement relates

---

waived for lack of development. See Bookman v. Comm'r of Soc. Sec., 490 F. App'x 314, 317 n.2 (11th Cir. 2012) (per curiam) ("[T]the failure to make arguments and cite authorities in support of an issue waives it.") (quoting Hamilton v. Southland Christian Sch., Inc., 680 F.3d 1316, 1319 (11th Cir. 2012)); Sanchez v. Comm'r of Soc. Sec., 507 F. App'x 855, 856 n.1 (11th Cir. 2013) (per curiam) (noting that because the plaintiff did not explicitly challenge the weight given to the medical opinions by the ALJ, she had "effectively abandoned any challenge to these decisions").

to the areas of interacting with others (12.05B2b) and adapting or managing oneself (12.05B2d).  (Doc. 21 at 22).

Plaintiff then advances a curious interpretation of the ALJ's assessment of Dr. Zlomke's medical opinions.  As noted, the ALJ gave "little weight to the marked and extreme limitations" assessed by Dr. Zlomke and "partial weight to the remainder of Dr. Zlomke's opinion, as it is somewhat consistent with the other opinions." (Doc. 13 at 41).  According to Plaintiff, "a plain reading of this portion of the decision demonstrates" that the ALJ "specifically gave *more* weight to the remainder" of Dr. Zlomke's opinion, and in doing so "effectively credited the portion of the opinion finding that [Plaintiff] had 'severe', meaning 'marked', limitations 'in her ability to respond appropriately to supervision, coworkers, and work pressures within a work setting'."  (Doc. 21 at 22) (emphasis added).  Plaintiff maintains that, if properly considered by the ALJ, these stated restrictions "would have provided ample support for a determination" that she has marked limitations in the areas of interacting with others and adapting or managing oneself and thus meets the criteria of Listing 12.05B's second prong.  (Id. at 22-23).

Plaintiff's interpretation of the ALJ's decision is untenable.  There is absolutely nothing to suggest that by giving little weight to the marked and extreme limitations assessed by Dr. Zlomke and partial weight to the remainder of Dr. Zlomke's

opinion, the ALJ was "effectively credit[ing]" or giving *more* weight to any portion of that opinion. Indeed, it would defy logic for the ALJ to expressly give "little weight to the marked and extreme limitations" while silently crediting limitations that are equivalent to marked limitations. As noted, in her medical source statement, Dr. Zlomke specifically assessed Plaintiff with *moderate limitations*[13] in her abilities to interact appropriately with the public, supervisors, and coworkers, and to respond appropriately to usual work situations and to changes in a routine work setting. (Doc. 13 at 828). Unlike the statements in Dr. Zlomke's examination report that are highlighted by Plaintiff,[14] the ALJ specifically referenced Dr. Zlomke's medical source statement opinions. (*See* _id._ at 41). And, the ALJ's decision reflects that the ALJ credited these moderate

_____

[13] Unlike her examination report, which used the undefined terms "significantly" and "severely," Dr. Zlomke's medical source statement rated Plaintiff's limitations using the five-point rating scale consisting of none, mild, moderate, marked, and extreme. (See Doc. 13 at 825, 827-28); see also 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00F2.

[14] The ALJ specifically discussed the opinions set forth in Dr. Zlomke's medical source statement but did not specifically reference the opinions listed in the "Prognosis" section of Dr. Zlomke's examination report. (See Doc. 13 at 36, 41, 825, 827-28). However, Plaintiff does not argue that the ALJ erred by failing to consider any of the opinions or statements in Dr. Zlomke's examination report. (See Doc. 21 at 20-23); see also Bookman, 490 F. App'x at 317 n.2 ("[T]the failure to make arguments and cite authorities in support of an issue waives it."). On the contrary, she argues that the ALJ "gave more weight to" and "effectively credited" these opinions. (See Doc. 21 at 22-23).

limitations [15] and thus implicitly rejected the notion that
Plaintiff's abilities to respond appropriately to supervision,
coworkers, and work pressures within a work setting are markedly
impaired.  (See id. at 30-31, 34, 39-41).

As the ALJ noted, these moderate limitations were consistent
with the findings of Plaintiff's other consultative mental
examiners.  During her February 2012 consultative examination with
Jennifer M. Jackson, Psy.D., Plaintiff was generally pleasant and
cooperative and displayed no unusual behaviors.  (Id. at 740).
Likewise, during her September 2013 consultative examination with
John W. Davis, Ph.D., Plaintiff was cooperative and friendly and
was able to provide her own history and communicate appropriately
and without difficulty.  (Id. at 766-68, 770).  Although Plaintiff
reported troubled interpersonal relationships, Dr. Davis stated
that Plaintiff "can get along with supervisors and coworkers" and
opined in his medical source statement that Plaintiff's abilities
to interact appropriately with supervisors, coworkers, and the
public are only moderately impaired.  (Id. at 769, 771, 774).

---

[15] For example, consultative mental examiner John W. Davis, Ph.D.,
like Dr. Zlomke, opined in his medical source statement that
Plaintiff's abilities to interact appropriately with supervisors,
coworkers, and the public, and to respond appropriately to usual
work situations and to changes in a routine work setting, are
moderately impaired.  (See Doc. 13 at 774, 828).  The ALJ found
Dr. Davis's opinions to be well-supported by his own examination
findings and generally consistent with the objective medical
evidence of record.  (See Doc. 13 at 40-41).

Although Plaintiff has cited evidence in the record which she claims supports a finding that she has marked limitations in at least two areas of mental functioning, that is, at best, a contention that the record evidence supports a different finding. That is not the standard on review. The issue is not whether there is evidence in the record that would support a different finding at step three, but whether the ALJ's step three finding is supported by substantial evidence. Because Plaintiff has failed to meet her burden to show that the ALJ's step three finding is not supported by substantial evidence, Plaintiff's claim must fail.

> **2.   Plaintiff has failed to establish that she had the medically determinable impairment of agoraphobia or, if she did, that the ALJ did not adequately consider her associated symptoms and functional limitations.**

Next, Plaintiff argues that the ALJ erred by failing to refer to her diagnosis of agoraphobia, assess its impact on her RFC, and consider whether it was the cause of her sporadic mental health treatment. (Doc. 21 at 24-28). Defendant counters that Plaintiff failed to establish that she had the discrete medically determinable impairment of agoraphobia, that it resulted in work-related mental limitations beyond those assessed by the ALJ, or that it was the cause of her sporadic mental health treatment. (Doc. 24 at 9-12).

In her brief, Plaintiff states that she was diagnosed with agoraphobia and cites two transcript pages in support of this assertion. (Doc. 21 at 25). The first of those pages is a service record from a July 22, 2016 medication monitoring appointment at AltaPointe Health Systems ("AltaPointe").[16]  (See Doc. 13 at 866). It notes that Plaintiff endorsed moderate anxiety and described "recent agoraphobic feelings," but it does not include a diagnosis of agoraphobia. (See id.). The second page cited by Plaintiff is a service record from a May 22, 2017 intake/biopsychosocial assessment at AltaPointe.[17]  (See id. at 915). It notes that Plaintiff reported isolating herself due to extreme ("10/10") anxiety, and it includes a non-primary diagnosis of "Agoraphobia".[18]  (See id.).

---

[16] The July 22, 2016 record is electronically signed by Pamela Tidemann, RN. (See Doc. 13 at 865).

[17] The May 22, 2017 record is electronically signed by therapist Robert Layzod, MS, and lists the approving practitioner as Jeff Barker, CRNP. (See Doc. 13 at 915; see also id. at 914, 917). It appears that therapist Layzod performed the May 22, 2017 intake/biopsychosocial assessment, and it is not clear whether CRNP Barker personally evaluated Plaintiff until her psychiatric evaluation on June 8, 2017. (See id. at 888-94, 899-904, 915, 917, 920).

[18] Although not cited by Plaintiff, there are additional mentions of agoraphobia in the May 22, 2017 AltaPointe service records, including a diagnosis of "Panic disorder with agoraphobia and moderate panic attacks" (see Doc. 13 at 902, 904), and a diagnostic impression of "Panic D/O with Mild Agoraphobia." (See id. at 900, 1075, 1079). Those diagnoses were also made by therapist Layzod and/or CRNP Barker. (See id. at 900-02, 904, 1075, 1079).

The record from Plaintiff's subsequent psychiatric evaluation at AltaPointe on June 8, 2017 reflects that Plaintiff reported that she was isolating and depressed.  (See id. at 889).  Plaintiff stated: "I feel all bottled up and can't go anywhere.  I just want to hide in my house."  (Id.).  She endorsed moderate anxiety and reported "frequent panic attacks, especially when I'm around a lot of people."  (Id. at 889, 891).  CRNP Barker noted that Plaintiff was describing "many depressive symptoms" and "social anxiety that is secondary to depression."  (Id. at 888, 893).  CRNP Barker's primary diagnosis was unspecified depressive disorder, and he did not diagnose Plaintiff with agoraphobia or panic disorder.  (See id. at 886, 888, 892-93, 903).   At a medication management appointment in July 2017, Plaintiff reported moderate anxiety when out and around people and endorsed "paranoia mostly around 'people'", which she described "more as social anxiety."  (Id. at 905, 911).  No diagnosis of agoraphobia was listed in the service record from that visit either.  (See id. at 905, 910).[19]

"The Social Security Administration has explained only evidence from 'acceptable medical sources' can establish the existence of a medically determinable impairment[.]"  Anteau v.

---

[19] Indeed, the Court has located no diagnosis of agoraphobia in the AltaPointe records other than those made on May 22, 2017.  The record also reflects that none of Plaintiff's consultative mental examiners diagnosed her with agoraphobia.  (See Doc. 13 at 731-37, 742, 756-65, 771, 777-83, 808-18, 825, 829-31, 860-66, 886-937, 1075-86).

Comm'r of Soc. Sec., 708 F. App'x 611, 613 (11th Cir. 2017) (per
curiam) (citation omitted).  Mental health counselors, such as
therapist Layzod, and nurse practitioners, such as CRNP Barker,
are not "acceptable medical sources" for purposes of establishing
an impairment.  See Abernathy v. Saul, 2021 U.S. Dist. LEXIS 54681,
at *15-16, 2021 WL 1102407, at *6 (N.D. Ala. Mar. 23, 2021) ("For
claims filed prior to March 27, 2017, nurse practitioners 'are not
acceptable medical sources, so their opinions are not 'medical
opinions' and 'cannot establish the existence of an impairment.'")
(citing Himes v. Comm'r of Soc. Sec., 585 F. App'x 758, 762 (11th
Cir. 2014) (per curiam)); Belk v. Colvin, 2015 U.S. Dist. LEXIS
10227, at *10, 2015 WL 404335, at *4 (N.D. Ala. Jan. 29, 2015)
(stating that because "a CRNP is not an 'acceptable medical source'
as defined in the regulations," a CRNP's opinion cannot establish
the existence of an impairment); Farnsworth v. Soc. Sec. Admin.,
636 F. App'x 776, 783 (11th Cir. 2016) (per curiam) (noting that
mental health counselors were "not 'acceptable medical sources'
under the regulations"); 20 C.F.R. §§ 416.902(a), 416.921,
416.929.  Thus, neither Plaintiff's description of "recent
agoraphobic feelings" nor the isolated diagnosis of "Agoraphobia"
by therapist Layzod and/or CRNP Barker are sufficient to establish
that Plaintiff had the discrete medically determinable impairment
of agoraphobia, and the ALJ did not err in not separately
discussing this alleged impairment.

Even if Plaintiff had demonstrated that she had the discrete medically determinable impairment of agoraphobia, she has not shown that the ALJ did not properly consider her associated symptoms or functional limitations. At step two, the ALJ found that Plaintiff has several severe mental impairments, including anxiety disorder.[20] (Doc. 13 at 28). At subsequent steps, the ALJ noted Plaintiff's reports of anxiety, paranoia, excessive worrying, and self-isolation, and her prescriptions for anti-anxiety and other psychotropic medications. (See id. at 30, 35-40). However, the ALJ found that Plaintiff's reports of disabling symptoms, including self-isolation and anxiety so severe that she could not make a simple purchase at a store, were not wholly consistent with the other evidence of record.

For example, the ALJ noted that although Plaintiff reported that she self-isolates and does not like to be around others due to anxiety, the record reflects that she was able to interact appropriately with her treating providers and family members, attend medical appointments, go to Walmart to check her blood

---

[20] Agoraphobia "is a type of anxiety disorder in which you fear and avoid places or situations that might cause you to panic and make you feel trapped, helpless or embarrassed. You fear an actual or anticipated situation, such as using public transportation, being in open or enclosed spaces, standing in line, or being in a crowd." https://www.mayoclinic.org/diseases-conditions/agoraphobia/symptoms-causes/syc-20355987 (last visited Mar. 30, 2022); see also Lacina v. Comm'r, Soc. Sec. Admin., 606 F. App'x 520, 529 n.10 (11th Cir. 2015) (per curiam) (citing a similar definition of agoraphobia by Mayo Clinic staff).

pressure, leave her house, have a girlfriend, and care for her three children. (Id. at 30, 39-40; see id. at 67-68, 822, 872, 887, 927, 1070, 1075). The ALJ recognized that Plaintiff's mental health treatment records and examination reports document some anxiety. (Id. at 40; see id. at 733, 768, 771, 822, 891, 911, 916). However, the ALJ noted that the records from Plaintiff's family physician repeatedly describe her mood and affect as appropriate, and that Dr. Jackson also listed Plaintiff's mood and affect as appropriate and stated that she did not appear anxious. (Id. at 40; see id. at 741, 751, 834, 838, 843, 847, 851, 855, 952, 962, 983, 1030, 1071, 1074, 1089). The ALJ also noted that the record reflects that Plaintiff responded positively to medication.[21] (Id. at 39).

The ALJ further noted that although Plaintiff reported not driving due to anxiety, the record contains multiple references to Plaintiff driving. (Id. at 35-36, 40; see id. at 761-62, 813, 820, 889, 895, 900, 927, 933, 960). The ALJ also referenced Dr. Davis's finding that Plaintiff can get along with supervisors and

---

[21] For example, during a February 2016 visit to AltaPointe, Plaintiff stated that "the [L]amictal really helped me, I hate [I] ran out of it." (Doc. 13 at 829). During a visit to USA Family Medicine in December 2016, Plaintiff reported "being on [T]opamax for moods and headaches with good relief." (Id. at 959). During a July 2017 visit to AltaPointe, Plaintiff described Topamax as "amazing" and stated that it had given her more emotions, calmed her down, and put her in a good mood. (Id. at 905). At her hearing before the ALJ, Plaintiff acknowledged that Topamax helped her anxiety "[a] little bit." (Id. at 63-64).

coworkers.  (Id. at 30; see id. at 771).  The ALJ cited Dr. Davis's and Dr. Zlomke's medical source statements and found their opinions that Plaintiff is moderately impaired in her abilities to interact with others and respond appropriately to usual work situations and to changes in a routine work setting to be well-supported and generally consistent with the objective evidence of record.  (Id. at 30, 36, 40-41; see id. at 774, 828).  To account for these moderate limitations, including Plaintiff's social anxiety, the ALJ limited Plaintiff to only occasional interaction with supervisors and coworkers, and no direct interaction with the public.  (Id. at 39-41).

Plaintiff cites Dr. Zlomke's statement that "[g]iven the longstanding nature of [Plaintiff's] symptoms and her difficulty with leaving the house, it may prove difficult for her to attend treatment" and asserts that the ALJ "inherently credited Dr. Zlomke's opinion that the Plaintiff will have difficulty leaving her home to attend treatment."  (Doc. 21 at 25; see Doc. 13 at 825).  This assertion is without merit.  As discussed previously, the ALJ considered Plaintiff's reports of self-isolation as an alleged symptom of her anxiety but found them not entirely consistent with the other evidence of record, most notably the hundreds of pages of medical records showing that Plaintiff sought treatment and attended medical appointments when motivated to do so.  The ALJ's findings in this regard have substantial support in

the record evidence.

Plaintiff argues that the ALJ unjustifiably held her sporadic mental health treatment against her without considering whether her failure to maintain regular treatment was the result of her agoraphobia. (Doc. 21 at 26-27). But Plaintiff ignores her own unequivocal hearing testimony that the gaps in her mental health treatment were due to lack of transportation. (See Doc. 13 at 62-65, 101). Moreover, Plaintiff's conflicting assertions regarding either agoraphobia or lack of transportation being the cause of her sporadic mental health treatment are *both* contradicted by the record, which shows that she was able to attend multiple medical appointments and procedures during the gaps in her mental health treatment. (See id. at 806-07, 943, 953, 974, 996, 1000, 1010, 1021, 1037, 1038, 1053, 1070, 1073, 1087).

Similarly, Plaintiff alleges that the ALJ held her "apparent non-compliance with mental health treatment against her," and she cites cases involving the denial of benefits for non-compliance. (Doc. 21 at 26-27). However, the ALJ did not find Plaintiff not disabled due to non-compliance with prescribed treatment. Nor did the ALJ unduly rely on Plaintiff's treatment history in evaluating her subjective statements and functional limitations, but instead properly considered it in conjunction with the other evidence of record, including the mental examination findings and the evidence of Plaintiff's activities and abilities. The ALJ's evaluation is

supported by substantial evidence, and Plaintiff's claim therefore must fail.

### 3.   Plaintiff has failed to establish that her physical impairments resulted in limitations beyond those included in the ALJ's RFC assessment.

Plaintiff further argues that the ALJ erred by failing to include additional restrictions in the RFC to account for her severe physical impairments of Raynaud's phenomenon,[22] asthma, and migraines, and by failing to adequately explain why no such limitations were assigned. (Doc. 21 at 29-33). Defendant counters that Plaintiff has failed to identify evidence that supports any additional limitations, and that the ALJ's decision makes clear why no further restrictions were included. (Doc. 24 at 12-13). Having reviewed the record at length, the Court finds that Plaintiff's claim is without merit.

---

[22]   Raynaud's (ray-NOSE) disease causes some areas of your body — such as your fingers and toes — to feel numb and cold in response to cold temperatures or stress.  In Raynaud's disease, smaller arteries that supply blood to your skin become narrow, limiting blood flow to affected areas (vasospasm).  Women are more likely than men to have Raynaud's disease, also known as Raynaud's or Raynaud's phenomenon or syndrome.  It appears to be more common in people who live in colder climates.  Treatment of Raynaud's disease depends on its severity and whether you have other health conditions.  For most people, Raynaud's disease isn't disabling, but it can affect your quality of life.

https://www.mayoclinic.org/diseases-conditions/raynauds-disease/symptoms-causes/syc-20363571 (last visited Mar. 30, 2022).

As noted *supra*, the ALJ found that in addition to her mental impairments, Plaintiff has several severe physical impairments, including migraines, Raynaud's phenomenon, and asthma.  (Doc. 13 at 28).   The ALJ further found that Plaintiff has the RFC to perform light work[23] with additional mental limitations.  (Id. at 34).  In making this finding, the ALJ stated that he had considered all of Plaintiff's symptoms and the extent to which those symptoms could reasonably be accepted as consistent with the objective medical evidence and other evidence.  (Id.).  The ALJ noted that Plaintiff alleged that she is disabled due to a number of mental impairments or conditions.  (Id. at 34-35; see id. at 582, 612-13).  The ALJ also noted that Plaintiff acknowledged at various times that she is able to prepare meals and perform various household chores.  (Id. at 36, 39; see id. at 603, 742, 825).  The ALJ further noted that Plaintiff is able to care for her children and independently care for her own personal needs.  (Id. at 39; see id. at 70-71, 593-94, 602, 927).

After a detailed discussion of the evidence pertaining to Plaintiff's mental impairments, the ALJ stated: "With respect to

---

[23] Light work is defined as work that "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."  20 C.F.R. § 416.967(b).  The regulations further state that "[e]ven though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls."  Id.

the claimant's physical impairments, viewing the evidence in the light most favorable to the claimant, the undersigned has limited the claimant to light work." (Id. at 41). The ALJ noted that Plaintiff "has had minimal recurrent treatment for any physical impairment." (Id.).

With respect to Plaintiff's asthma, the ALJ acknowledged that Plaintiff had been diagnosed with asthma and had been prescribed an inhaler at one time, but he noted that her asthma was stable, her respiratory examinations were generally normal, and she did not require emergency room or inpatient hospital treatment for acute exacerbation of her asthma during the relevant period. (Id. at 41; see id. at 725, 748, 751, 755, 805-06, 834, 838, 843, 847, 851, 855, 869, 874, 878, 951, 963, 983, 987, 990, 997, 1011, 1030, 1034, 1054, 1056, 1060, 1070, 1074, 1088).

With respect to Plaintiff's migraines, the ALJ noted that they were managed with medication (Topamax), Plaintiff's neurological examinations were generally normal, and Plaintiff had not been under the regular care of a specialist for this condition and did not require emergency room or inpatient treatment for migraines. (Id. at 41-42; see id. at 725, 796, 798-99, 804-06, 843, 847, 855, 874, 878, 905, 910, 959, 996-97, 1011, 1030, 1037, 1054-56, 1059-60, 1070, 1074, 1089).

With respect to Plaintiff's Raynaud's phenomenon, the ALJ noted that Plaintiff was diagnosed with this condition in August

2015, her treating provider recommended lifestyle changes and monitoring only, and Plaintiff had not required medication or other treatment for this condition since 2015.  (Id. at 42; see id. at 836-37, 867-68).

As the ALJ correctly recognized, the record reflects that Plaintiff listed only mental conditions in her disability reports.  (See id. at 34-35, 582, 612-13).  Likewise, the function reports submitted by Plaintiff and her stepfather indicate that Plaintiff's allegedly disabling conditions were mental in nature.  (See id. at 593-608).  Plaintiff did not allege functional limitations related to any physical impairment during her administrative hearing in September 2016.  (See id. at 85-104).  And the decision that was rendered following that hearing noted that although the medical evidence showed some treatment for acute physical complaints, those complaints had either resolved with treatment or remained stable, and Plaintiff had not alleged any physical limitations.  (Id. at 213).  Thus, the Administrative Law Judge found that Plaintiff had no physical impairment that had more than a minimal effect on work-related functioning.  (Id.).

During her most recent administrative hearing in April 2019, Plaintiff did not allege that she was unable to work because of any physical impairment.  (See id. at 55-78).  On the contrary, Plaintiff's counsel specifically confirmed to the ALJ during the hearing that "this is a mental only case."  (Id. at 61).

Notwithstanding the foregoing, Plaintiff now attempts to capitalize on the fact that the ALJ construed the evidence in her favor by finding her asthma, migraines, and Raynaud's phenomenon to be severe impairments at step two and limiting her to light work to account for her physical impairments.  However, she has failed to cite a single piece of record evidence suggesting that her physical impairments cause functional limitations beyond those contained in the ALJ's RFC assessment.[24]  The ALJ's discussion of Plaintiff's physical impairments is well-supported by the record, as is his conclusion that none of these impairments warrant additional limitations beyond those already included in the RFC. Accordingly, Plaintiff's claim must fail.

> **4.  The ALJ's hypothetical question to the VE adequately accounted for Plaintiff's moderate limitation in the area of concentrating, persisting, or maintaining pace.**

Last, Plaintiff argues that the ALJ erred by presenting a

---

[24] The only transcript pages cited by Plaintiff in support of her argument are from an August 28, 2015 treatment record from USA Family Medicine. (See Doc. 13 at 836, 867; Doc. 21 at 30-32).  On that date, Plaintiff was assessed with Raynaud's phenomenon after complaining "of periods that her hands and or legs hurt and her toes or fingers seem to turn color-purple or bluish in color," which "occurs more in cooler temperatures." (Doc. 13 at 836-37, 867-68).  However, it was noted that Plaintiff was presently asymptomatic, and she was instructed to monitor the condition and to consider medication "[i]f lifestyle changes are attempted and symptoms worsen[.]"  (Id. at 836, 867).  Plaintiff identifies no evidence indicating that she experienced continuing, much less worsening, symptoms, or that she sought further treatment relating to this condition.

hypothetical question to the VE that failed to include all of her limitations, specifically those resulting from her moderate limitation in the area of concentrating, persisting, or maintaining pace. (Doc. 21 at 33-36). Defendant counters that the ALJ's hypothetical was complete because it included all the limitations found in the RFC, and that the VE's testimony in response to the hypothetical therefore constituted substantial evidence to support the ALJ's conclusion at step five of the sequential evaluation process. (Doc. 24 at 13-15).

"At step five, the Commissioner must determine that significant numbers of jobs exist in the national economy that the claimant can perform." Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180 (11th Cir. 2011). When a claimant has non-exertional impairments that significantly limit basic work skills, the ALJ "should take evidence from a vocational expert to determine whether there exists in the national economy a significant number of jobs for someone with [the claimant's] limitations." Swindle v. Sullivan, 914 F.2d 222, 226 (11th Cir. 1990) (per curiam). "In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." Wilson v. Barnhart, 284 F.3d 1219, 1227 (11th Cir. 2002) (per curiam); see also Samuels v. Acting Comm'r of Soc. Sec., 959 F.3d 1042, 1047 (11th Cir. 2020) ("While the ALJ need not list every symptom of

the claimant, the hypothetical must provide the VE with a complete picture of the claimant's RFC.  That is to say the hypothetical must include the claimant's impairments or otherwise implicitly account for these limitations.") (internal citation and quotation marks omitted).

"Where the ALJ determines at step [three] of the sequential evaluation process that the claimant's mental impairments caused limitations in concentration, persistence, or pace, the ALJ must include those limitations in the hypothetical questions posed to the VE."  Washington v. Soc. Sec. Admin., Comm'r, 503 F. App'x 881, 883 (11th Cir. 2013) (per curiam) (citing Winschel, 631 F.3d at 1180-81).  A hypothetical question restricting the claimant to simple, routine tasks or unskilled work "adequately accounts for restrictions related to concentration, persistence, and pace where the medical evidence demonstrates that the claimant retains the ability to perform the tasks despite limitations in concentration, persistence, and pace."  Timmons v. Comm'r of Soc. Sec., 522 F. App'x 897, 907 (11th Cir. 2013) (per curiam); see Winschel, 631 F.3d at 1180-81; Dawson v. Comm'r of Soc. Sec., 528 F. App'x 975, 977 (11th Cir. 2013) (per curiam) ("[T]he ALJ may instead include in the hypothetical questions the limitation that the claimant is restricted to unskilled work if the medical evidence shows that the claimant can perform simple, routine tasks or unskilled work despite her limitations in concentration, persistence, or pace.").

At Plaintiff's administrative hearing, a VE was called to testify with regard to jobs that Plaintiff could perform with her specified limitations.  The ALJ posed the following hypothetical question to the VE:

> ALJ: I want you to assume a hypothetical individual of the claimant's age and education and the past work you have described. Further assume they can do a range of light work, except their ability to understand, remember and apply information would be limited to performing simple and routine tasks. She can read and understand short and simple information. Her ability to use judgment is limited to performing simple work-related decisions. She can interact with supervisors and coworkers occasionally. She could work around the public but should avoid direct interaction with them.  She could deal with occasional changes in the routine work setting. Could that hypothetical individual perform any of the past – any work in the national economy?

> VE: Yes, Your Honor. I'll identify – excuse me – a poultry eviscerator. The DOT 525.687-074. Light and unskilled with an SVP of 2.  In the United States approximately 154,000 jobs. I would identify silver wrapper. The DOT is 318.687-018. Light with an SVP of 1. In the United States approximately 106,200 jobs. And I would identify a maid in the industry. The DOT is 323.687-014. Light and unskilled with an SVP of 2. In the United States, an excess of 500,000.

> ALJ: Is that testimony consistent with the DOT?

> VE: It is, Your Honor.

(Doc. 13 at 79).

At step three of his decision, the ALJ found that Plaintiff has a moderate limitation in the area of concentrating, persisting, or maintaining pace.  (Id. at 31).  The ALJ then found that Plaintiff has the RFC to perform light work, with the following

mental limitations: she can perform only simple and routine tasks; she can read and understand only short and simple information; she can make only simple work-related decisions; she can only occasionally interact with supervisors and coworkers; she can work around the public but should avoid direct interaction with the public; and she can deal with only occasional changes in a routine work setting.   (Id. at 34).   In his discussion of the RFC assessment, the ALJ stated that he had limited Plaintiff "to simple and routine tasks, reading and understanding short simple information, making simple work-related decisions, and to only occasional changes in a routine work setting to account for her moderate limitations in . . . understanding, remembering or applying information, in concentrating, persisting and maintaining pace, and in adapting and managing oneself."   (Id. at 40).   At step five of his decision, the ALJ concluded, based on the testimony of the VE, that Plaintiff is capable of performing other work that exists in significant numbers in the national economy, such as the three representative occupations identified by the VE during the hearing.   (Id. at 42-43).

Plaintiff does not dispute that the ALJ's hypothetical question to the VE included all of the limitations found in the RFC.   Plaintiff also acknowledges that the ALJ's RFC assessment includes limitations to account for her moderate limitation in the area of concentrating, persisting, or maintaining pace, and she

does not argue that these limitations fail to sufficiently account for her difficulties in concentrating, persisting, or maintaining pace. Stated differently, Plaintiff does not allege that the ALJ failed to identify medical evidence[25] demonstrating that, despite her moderate limitation in concentration, persistence, or pace, she is capable of performing simple and routine tasks, reading and understanding short and simple information, making simple work-related decisions, and dealing with occasional changes in a routine work setting. (See Doc. 21 at 33-36; see also Doc. 13 at 34, 40).

Instead, Plaintiff posits that the ALJ's hypothetical question to the VE was incomplete because none of the functional limitations included in the hypothetical were explicitly or implicitly connected to her deficiencies in the area of

---

[25] For example, the ALJ stated:

> The claimant testified that she has problems remembering, following directions and concentrating. The claimant's mental exams, however, generally show intact concentration, attention, and memory. The claimant is prescribed medication for treatment of ADHD, which she acknowledged is helpful. Dr. Davis found no indications of deficits in the claimant's overall concentration or attention. During the evaluation with Dr. Jackson, the claimant was able to subtract serial 2's, do simple addition and subtraction, count backwards from 20 to 1, and spell "cat" backwards. During the evaluation with Dr. Zlomke, the claimant's attention was fleeting at times but she was able to count backwards from 10 and spell "cat" backwards. The claimant's memory was generally intact during all three consultative evaluations.

(Doc. 13 at 40).

concentrating, persisting, or maintaining pace. (See Doc. 21 at 34-36). Plaintiff points out that the limitation to performing simple and routine tasks in the hypothetical was tied to the ability to understand, remember, and apply information, and that the limitation to performing simple work-related decisions was tied to the ability to use judgment. (Id. at 35). Plaintiff notes that there is nothing in the hypothetical simply limiting her to performing simple and routine tasks (without a connection to the ability to understand, remember, and apply information), and nothing limiting her to performing simple and routine tasks specifically as a result of difficulties with concentrating, persisting, or maintaining pace. (Id. at 35-36).

As an initial matter, there is no question that the ALJ's hypothetical incorporated all of the limitations assessed in the RFC. These include the limitations to "simple and routine tasks, reading and understanding short simple information, making simple work related decisions, and to only occasional changes in a routine work setting," which the ALJ specifically included, in part, to account for Plaintiff's moderate limitation in the area of concentrating, persisting, or maintaining pace. (See Doc. 13 at 34, 40). Plaintiff does not assert that these functional limitations do not adequately account for her moderate difficulties in concentration, persistence, or pace. Rather, she appears to argue that the hypothetical question to the VE

insufficiently accounted for her moderate impairment in concentrating, persisting, or maintaining pace because it specifically connected two of the relevant functional limitations (i.e., performing simple and routine tasks and performing simple work-related decisions) to other mental functioning areas or abilities (i.e. understanding, remembering, and applying information and using judgment). (See Doc. 21 at 35-36).

The Court finds that the ALJ's hypothetical question to the VE adequately accounted for Plaintiff's limitations in the area of concentrating, persisting, or maintaining pace. The ALJ cited ample medical and other evidence to support the limitations that he included, in part, to account for Plaintiff's moderate limitation in concentrating, persisting, or maintaining pace. Further, the Eleventh Circuit has found in multiple cases that limitations similar to, or even less restrictive than, the limitations assessed by the ALJ in this case were sufficient to account for a rating of moderate limitations in the area of concentrating, persisting, or maintaining pace. See, e.g., Thornton v. Comm'r, Soc. Sec. Admin., 597 F. App'x 604, 612 (11th Cir. 2015) (per curiam) ("[T]he ALJ properly determined that Thornton could perform simple, non-detailed tasks despite her moderate limitations in maintaining concentration, persistence, and pace. Therefore, the ALJ's hypothetical was not deficient because it did not specifically refer to Thornton's limitations in

maintaining concentration, persistence, and pace."); Neefe v. Comm'r of Soc. Sec., 531 F. App'x 1006, 1007 (11th Cir. 2013) (per curiam) ("Since the ALJ determined that the medical evidence demonstrated that Neefe could engage in simple tasks, despite moderate limitation in concentration, persistence, and pace, the ALJ sufficiently accounted for such impairments, implicitly, by limiting the hypothetical that was posed to the vocational expert to include only simple tasks or unskilled work."); Mijenes v. Comm'r of Soc. Sec., 687 F. App'x 842, 846 (11th Cir. 2017) (per curiam) (finding that "[b]ecause the medical evidence showed that Mijenes could perform simple, routine tasks despite her limitations in concentration, persistence, and pace, the ALJ's limiting of Mijenes's functional capacity to unskilled work sufficiently accounted for her moderate difficulties in concentration, persistence, and pace").

Plaintiff cites no authority to support her assertion that the ALJ's hypothetical question, which incorporated all the limitations found in the RFC, failed to account for her moderate limitation in the area of concentrating, persisting, or maintaining pace simply because it tied certain relevant functional limitations to other mental areas or abilities.[26]  And,

---

[26] Assuming *arguendo* that the ALJ erred in his articulation of the hypothetical by connecting the limitation to simple and routine tasks to the area of understanding, remembering, and applying information only (instead of simply stating the limitation without

it is clear that the ALJ was not required to specifically mention Plaintiff's moderate rating in the area of concentrating, persisting, or maintaining pace in his hypothetical to the VE. See, e.g., Hines-Sharp v. Comm'r of Soc. Sec., 511 F. App'x 913, 916 (11th Cir. 2013) (per curiam) (noting that an ALJ need not "intone the magic words concentration, persistence, and pace if the ALJ finds based on the PRT that a claimant has limitations in that broad functional area" and "may account implicitly for those limitations in other ways when crafting a hypothetical"). Moreover, Plaintiff simply ignores the other functional limitations (reading and understanding short and simple information and dealing with occasional changes in the routine work setting) included by the ALJ partly to account for her moderate impairment in concentration, persistence, or pace, which were not connected to other mental areas or abilities in the hypothetical. Because the hypothetical included all functional limitations the ALJ found to exist, which are supported by the

---

connecting it any mental functional area or ability), the error was harmless because the hypothetical nevertheless accounted for all the limitations found in the RFC, including those expressly listed, in part, to account for Plaintiff's moderate difficulties in concentrating, persisting, or maintaining pace, which Plaintiff does not challenge. "[A]n error is harmless if it does not affect the Commissioner's ultimate decision." Burgos v. Acting Comm'r of Soc. Sec., 705 F. App'x 794, 801 (11th Cir. 2017) (per curiam) (citing Diorio v. Heckler, 721 F.2d 726, 728 (11th Cir. 1983)). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." Shinseki v. Sanders, 556 U.S. 396, 409 (2009).

record, the VE's testimony constituted substantial evidence for the ALJ's finding at step five.

Plaintiff contends that the hypothetical was problematic because it resulted in the VE identifying three jobs that involve repetitive or short-cycle work and are relatively fast-paced, and she "asserts that repetitive or short cycle work is performed at a production pace, which is inconsistent with moderate limitations in concentration, persistence, and pace."[27]  (Doc. 21 at 36).  This argument fails for multiple reasons.  First, Plaintiff does not allege that the ALJ erred by failing to include RFC limitations precluding work performed at a fast or production-rate pace, and she points to no evidence that would have required the inclusion of such limitations.  Second, Plaintiff does not allege that the DOT describes any of the jobs identified by the VE as being fast-paced or performed at a production rate, and she cites no authority to support her bare assertion that repetitive or short-cycle work is necessarily performed at a production-rate pace.  See Shannon C. S. v. Saul, 2020 U.S. Dist. LEXIS 65397, at *2-3, 2020 WL 1853307, at *1 (C.D. Cal. Apr. 13, 2020) ("There is nothing in the DOT that defines . . . 'repetitive or short-cycle work' as fast-paced.").  Accordingly, Plaintiff's claim must fail.

---

[27] The Court notes that the ALJ assessed Plaintiff with a moderate limitation in the area of concentrating, persisting, *or* maintaining pace, not concentrating, persisting, *and* maintaining pace.  (See Doc. 13 at 31).

**VIII.**     <u>**Conclusion**</u>

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner of Social Security denying Plaintiff's claim for supplemental security income be **AFFIRMED.**

**DONE** this **30th** day of **March, 2022.**

                                        **/s/ SONJA F. BIVINS**
                                **UNITED STATES MAGISTRATE JUDGE**